[Civ. No. 3455. First Appellate District, Division Two.—July 26, 1920.]

SCHALK CHEMICAL COMPANY (a Corporation), Appellant, v. R. W. PRIDHAM COMPANY (a Corporation), Respondent.

[1] CONTRACTS—QUOTATION OF PRICE—ABSENCE OF BINDING ACCEPTANCE—WITHDRAWAL OF OFFER.—A corporation having entered into an agreement to manufacture and sell to another a given number of pasteboard cartons at a specified price, which quantity was duly delivered, the quotation by it of the price that would apply upon any excess quantity, over the quantity specified, which the purchaser would take between certain specified dates, in the absence of an acceptance by which the latter was bound to order from such manufacturer all of its requirements in cartons between those dates, constitutes but a unilateral contract or offer which, being without consideration, may be withdrawn at any time.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank J. Thomas and A. G. Ritter for Appellant.

Donald Barker and Wm. H. Neblett for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against it in an action for damages for failure to deliver to plaintiff a quantity of pasteboard cartons in accordance with an alleged contract between the parties. The plaintiff is a corporation engaged in the manufacture and sale of a certain washing-powder packed in pasteboard cartons of different sizes. The defendant is a corporation engaged in the business of manufacturing and selling such cartons.

There is only one question presented by the appeal, and that is as to the existence of a binding contract between the parties for the delivery of the cartons ordered by plaintiff which the defendant refused to deliver. The alleged contract is evidenced by correspondence between the parties which it is necessary for us to consider in some detail. On

December 3, 1914, the plaintiff wrote to the defendant requesting quotation of prices on cartons. The material part of the letter is as follows: "We would be pleased to have you submit your bid on 2,010,000 Hydro Pura cartons, basing your estimates on the following specifications and requirements." Then follows detailed specifications as to size, quality, quantity, etc., of three different types of cartons, and also dates of delivery of each different style.

To this letter defendant replied, on December 23, 1914, as follows:

"We herewith beg to quote you on the following cartons as per specifications attached. These cartons to conform with your request for bids under date of Dec. 3d, and to be as per your samples in every respect.

| | | |
|---|---|---|
| 10M Hydro-Pura display cartons ...........$37.50 per M. | | |
| 900M Large size Hydro-Pura cartons.......... 3.70 " " | | |
| 600M Small size Hydro-Pura cartons.......... 1.85 " " | | |
| 500M Sample cartons ....................... 1.00 " " | | |

"Delivery on above as per your letter of Dec. 3d."

Plaintiff thereupon, on January 6, 1915, sent to defendant the following letter: "We are in receipt of yours of December 23d in which you quote us prices on Hydro Pura cartons according to number and specifications named in your letter of Dec. 3d." (Then follows quotation of prices, amounts, etc., in accordance with letter of Dec. 3d.) The letter then continues:

"You can enter our order for the above amount of cartons at the prices stated, to be delivered according to our requirements between Jan. 1, 1915 and July 1, 1916.

"These cartons must be satisfactory to us at all times in regard to printing, color and quality and we have the privilege of increasing the amount of the original order at any time during the period the original contract is in effect."

On January 12, 1915, defendant wrote to plaintiff acknowledging its order, as follows:

"We are in receipt of your order of Jan. 6th for:

| | | |
|---|---|---|
| 10,000 Hydro-Pura display cartons at ..........$37.50 M | | |
| 900,000 large Hydro-Pura cartons at ............. 3.70 M | | |
| 600,000 small Hydro-Pura cartons at............. 1.85 M | | |
| 500,000 Hydro-Pura sample cartons at............ 1.00 M | | |

"These cartons to be taken out between Jan. 1, 1915, and July 1, 1916."

[1] The quantity of cartons contracted to be furnished by the above correspondence was duly delivered, and no question arises over this portion of the transaction. However, on February 3, 1915, defendant wrote to plaintiff a letter which is one of the things upon which plaintiff relies to establish the contract under which recovery is sought here. This letter is as follows: "We beg to advise that the prices quoted you on Dec. 23, 1914, on Hydro-Pura cartons will apply upon any excess quantity, over the quantity specified, which you may take between January 1st, 1915, and July 1st, 1916."

The position of the trial court with reference to this last letter was, apparently, that as the record contained no evidence of any agreement on the part of the plaintiff to take any quantity of cartons whatever in excess of the 2,010,000 ordered by its letter of January 6, 1915—this letter of February 3, 1915, was in effect nothing more than a quotation to plaintiff of the same prices at which deliveries were to be made under the contract contained in the letter of December 23, 1914; that this quotation of prices, being an offer without consideration, could be withdrawn at any time before acceptance. Plaintiff and appellant seeks to save this alleged contract from the objection that it is lacking in mutuality, by arguing that the intent of the parties appears from the correspondence to be that the defendant was obligated to order all its requirements of cartons from the plaintiff during the period from January 1, 1915, to July 1, 1916. We think a mere reading of the foregoing correspondence demonstrates that the defendant could not have recovered damages from the plaintiff for its failure to order from defendant all of its requirements in cartons in excess of the 2,010,000 specifically ordered in the letter of January 6, 1915. Unless defendant had this right, the contract is a unilateral one, and plaintiff may not recover upon the same. (*Jenkins* v. *Anaheim Sugar Co.*, 247 Fed. 958, 960, [L. R. A. 1918E, 293, 160 C. C. A. 658]; *Bartlett* v. *Standard Box Co.*, 16 Cal. App. 671, 674, [117 Pac. 934].) There are numerous cases upon this question which are cited to us by the respondent, and there are many others to be found, but we consider it unnecessary to discuss the matter more fully. Since we are of the opinion that the plaintiff was not bound to purchase from the defendant all its requirements of car-

tons in excess of the specified quantity ordered during the period mentioned in the letters, it becomes immaterial whether or not the defendant knew, because of previous dealings with the plaintiff, approximately what plaintiff's requirements were each year. Plaintiff being required to purchase nothing under the letter of February 3, 1915, before quoted, the offer contained therein was without consideration. The plaintiff claims that this offer contained in said letter of February 3, 1915, was kept in force and effect until August 31, 1917, by reason of the following letter written by defendant to plaintiff on April 5, 1916: "We herewith agree to extend your contract for Washing Powder cartons to August 31st, 1917, at the prices now in effect." This letter in no way removes the objection to the enforcement of the alleged contract. It remained an offer, which, being without consideration, could be withdrawn at any time. The defendant did accept orders for cartons under the extension offer, up until July 1, 1916. It is because of the refusal to fill orders after that time at the prices quoted in the letter of December 23, 1914, that this action is brought. The plaintiff continued to demand the filling of orders at the old prices, during the months of September, October, November, and December, 1916, and on February 21, 1917, the defendant wrote to the plaintiff in response to a letter from said plaintiff: "We have heretofore notified you orally and otherwise, and we now again notify you that these prices are withdrawn, particularly because of the disturbed market conditions, and the price hereafter must be fixed as each order is given and accepted." Thereafter, the plaintiff was compelled to order its cartons in the open market at a higher price than it had previously paid for the same, and it is for this excess in price that recovery is sought in the present action.

In our opinion the trial court did not err in its holding that this offer to furnish cartons up until August 31, 1917, at the same prices at which they had been furnished under the contract of December 23, 1914, was without consideration. For this reason it was unenforceable against the defendants after notice of withdrawal.

There are numerous matters urged by appellant in its brief which we consider immaterial. The fact that some deliveries were made upon orders received by the defendant

after July 1, 1916, cannot operate to give binding force to this unilateral contract. This proposition scarcely needs the citation of authority, but the case of *Cold Blast Trans. Co.* v. *Kansas City Bolt & Nut Co.*, 114 Fed. 77, 80, [57 L. R. A. 696, 52 C. C. A. 25], seems to be precisely in point. The further fact that the plaintiff company did order from the defendant all the cartons required by it during the time specified in the letters, and up until the time of the refusal of the defendant to furnish the cartons at the old prices, is also immaterial, in view of our conclusion that plaintiff was not obligated to do this.

The judgment is affirmed.

Nourse, J., and Brittain, J., concurred.