[Civ. No. 9227. First Appellate District, Division One.—January 28, 1935.]

NIELS ANDERSEN et al., Appellants, v. LA RINCONADA COUNTRY CLUB (a Corporation), Respondent.

Arthur Joel and Bohnett, Hill & Cottrell for Appellants.

John J. Jones for Respondent.

THE COURT.—An appeal by the plaintiffs from a judgment entered against defendant for a sum less than plaintiffs' claim.

In 1928 the parties to this action entered into an agreement in writing for the sale and purchase of water to be used for irrigation and domestic purposes. The defendant owns and operates a country club and golf course. The contract recited that "upon the lands of the parties of the first part which adjoin the land of the party of the second part there is a well now equipped with a pumping plant which the parties of the first part believe will produce sufficient water to irrigate the fairways and grounds of such golf course, and also for such domestic and other uses on the lands of the second party as will be required by a golf club; and the party of the second part desires to obtain and have the use of said water supply for the purposes aforesaid". Therein it was provided that "in consideration of the premises and in consideration also of the mutual covenants and agreements hereinafter set forth" the parties of the first part (hereinafter referred to as the plaintiffs) agreed for a period of ten years to sell and deliver to the party of the second part (hereinafter referred to as the defendant) the water from the well mentioned. The quantity to be delivered was "to the extent and up to the full capacity of the pump with which said well . . . is now equipped or any other pump of equal capacity . . . ," subject to plaintiffs' prior right during certain years to irrigate certain acreage owned by them and another. The water was to be delivered by means of a pipe-line, and defendant promised to pay an agreed sum

based upon the number of gallons pumped for each hour the pump should be operated and the water therefrom delivered to defendant's premises. The contract also contained the following provision: "The party of the second part agrees that while this contract shall remain in force and effect and while the parties of the first part shall be ready, willing and able to deliver water to the lands of the party of the second part as provided in this contract it will purchase water from no other source, provided, however, that it shall not be precluded hereby from obtaining a supply of water from some other source for household and domestic uses in any clubhouse which may be built upon said lands if it shall find the water from the well of the parties of the first part unsuitable for such domestic or household use."

It is admitted and the court found that plaintiffs furnished such water as defendant required according to the terms of the contract from October 20, 1928, to November 1, 1930, and that the latter paid therefor. In September, 1930, the defendant purchased from one Bogner a parcel of land containing one-quarter of an acre, upon which was situated a water well, and also acquired a right of way over other lands of the grantor for a pipe-line to its clubhouse. After this purchase defendant used the water from the Bogner well and practically ceased to take water from the plaintiffs.

Defendant claimed that the Bogner transaction was not a purchase of water but of land; and that this well being sufficient to supply its needs it was no longer bound to purchase water from the plaintiffs. The present action is one to recover damages on the ground that defendant refused to perform the contract.

While it is requisite to the formation of a contract that there must be mutuality—which is in effect a statement that there must be a valid consideration (Williston, Contracts, sec. 140; *Stanton* v. *Singleton,* 126 Cal. 657 [59 Pac. 146, 47 L. R. A. 334]; *Schimmel* v. *Martin,* 190 Cal. 429 [213 Pac. 33]; *Bartlett Springs Co.* v. *Standard Box Co.,* 16 Cal. App. 671 [117 Pac. 934]; *Shortell* v. *Evans-Ferguson Corp.,* 98 Cal. App. 650 [277 Pac. 519]), it is well settled that a promise of one party to buy of no one else is a sufficient consideration for a promise by another to furnish whatever quantity of a commodity the first party may need or use, even though the latter's business may be such that

nothing will be needed during the period fixed. (*Vickrey v. Maier*, 164 Cal. 384, 389 [129 Pac. 273]; *Burgess Sulphite Fiber Co. v. Broomfield*, 180 Mass. 283 [62 N. E. 367]; Page on Contracts, 2d ed., sec. 580; Williston, Sales, 2d ed., sec. 464, p. 1171.) Here the defendant agreed to take from plaintiffs all the water it should need for its lands, depending, however, upon seasonal and weather conditions, it being recognized that during certain periods the rainfall would render irrigation unnecessary; but subject to this it agreed that while the contract remained in force it would "purchase water from no other source" unless it found the water furnished unsuitable for domestic purposes, in which event it might obtain water from some other source for use in its clubhouse. Defendant made no claim that the water furnished was unsuitable but that the purchase of the Bogner well was not a purchase of water within the meaning of the contract.

At the trial the evidence established beyond question that the object in making the purchase from Bogner was the acquisition of the water supply which had been developed, and that the land itself—an area, as stated, of approximately one-fourth of an acre—was not otherwise valuable or useful to the defendant.

A contract must receive a reasonable construction, and from an express undertaking the law will imply whatever the parties may reasonably be supposed to have meant and what is essential to render the transaction fair and just (Civ. Code, sec. 1643; *Stein v. Archibald*, 151 Cal. 220 [90 Pac. 536]; *Stoddart v. Golden*, 179 Cal. 663 [178 Pac. 707, 3 A. L. R. 1060]; *Kenan v. Yorkville etc. Co.*, 109 N. C. 462 [96 S. E. 524, 1 A. L. R. 1387]); and its language should be interpreted most strongly against the party who caused the uncertainty to exist, the promisor being presumed to be such party. (Civ. Code, sec. 1654.)

It was the view of the trial court that defendant's purchase of the Bogner well and its refusal to receive water from plaintiffs thereafter was not a violation of the contract. While the word "purchase" means to buy, it also means every mode of acquisition except by inheritance. (*Semi-Tropic etc. Assn. v. Johnson*, 163 Cal. 639, 643 [126 Pac. 488]; *March v. Lott*, 8 Cal. App. 384 [97 Pac. 163]; *People v. Cockrill*, 62 Cal. App. 22, 33 [216 Pac. 78].) Although

the language of the contract would not in view of the circumstances justify a construction as broad as this, nevertheless the conclusion that the purchase outright of a developed water supply, the object being the acquisition of water and nothing else, was not a purchase contrary to the letter as well as the spirit of the contract appears to us to be unreasonable. That the defendant might have developed a water supply on land which it owned at the time the contract was made or upon other land subsequently acquired is not in view of the facts material.

By the present action, which was commenced on December 18, 1931, plaintiffs sought to recover damages for defendant's refusal to accept delivery of water in accordance with the contract during the period beginning November 1, 1930, and ending December 3, 1931, and the sum of $113 for water delivered during that period for which, it was alleged, defendant had failed to pay. The theory of plaintiff's claim for damages was that defendant would be liable for the full contract price of all water it should have accepted during the period mentioned. In this plaintiffs are mistaken; they would be entitled to no more than the benefit which performance would have conferred, i. e., their profit. (22 Cal. Jur., Sales, sec. 129, p. 1072; *Thompson* v. *Hamilton Motor Co.*, 170 Cal. 737 [151 Pac. 122, Ann. Cas. 1917A, 677].) The burden of showing facts in mitigation of damage would, of course, rest upon the defendant. (*Vitagraph, Incorporated,* v. *Liberty Theaters Co.*, 197 Cal. 694 [242 Pac. 709]; *Rhodes* v. *Firestone Tire Co.*, 51 Cal. App. 569 [197 Pac. 392].) It appears to have been the view of the trial court that had defendant violated the contract the plaintiffs would have been entitled to the full contract price without regard to profit, and refused to permit testimony on this question. The question, however, became immaterial in view of the court's conclusion that the refusal to take water was not under the circumstances a violation of the contract. A judgment was entered in plaintiffs' favor for the price of the water delivered, namely, $113, but their claim for damages otherwise was denied. We are of the opinion that the interpretation given the contract was erroneous, and that the plaintiffs should have been permitted to prove in addition their damage, if any.

The judgment is accordingly affirmed as to the above amount, and the cause remanded for the purpose of determining the amount of plaintiffs' damage, if any, by reason of defendant's alleged refusal to receive water from the plaintiffs in accordance with the contract. The appellants to recover costs of this appeal.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 28, 1935.